**Toylar J. CRAWFORD, a minor, by and through her mother and next friend Carolyn J. Crawford, and Carolyn J. Crawford, individually, Appellees,**

v.

**Lee Otis GIPSON, Appellant,**

and

**State Farm Mutual Automobile Insurance Company, Intervenor.**

No. 52267.

Supreme Court of Oklahoma.

March 2, 1982.

As Corrected March 3, 1982.

Foliart, Mills & Niemeyer, Oklahoma City, for appellees.

Proctor, Fleming & Speck, Richard A. Proctor and Scott M. Rhodes, Oklahoma City, for appellant and intervenor.

## PER CURIAM:

Toylar J. Crawford filed this action against Lee Otis Gipson for personal injuries and property damage resulting from an automobile collision that occurred in Oklahoma City. Defendant Gipson was personally served with summons. No pleading or answer was filed and on June 27, 1977, a default judgment was taken against Gipson for $25,000.

On November 29, 1977, defendant's insurer, State Farm Mutual Automobile Insurance Company, without the consent of defendant, filed a Petition to Vacate Judgment. The petition alleged that the insurer received no notice of the lawsuit and was denied its right to present a good and valid defense. On February 9, 1978, a second Petition to Vacate was filed by State Farm "on behalf of" defendant. The facts as to when or if the insurer received notice of Gipson's pending lawsuit before default was taken are highly disputed.

On March 2, 1978, a hearing was held on State Farm's Petition to Vacate. Thereaft-er, the trial court denied State Farm's Petition to Vacate for failure to show unavoidable casualty or misfortune under 12 O.S. 1971, § 1031, subd. 7.[1]

State Farm (with Gipson as named appellant) appealed. The Court of Appeals vacated the default judgment, concluding that the order overruling State Farm's petition was clearly against the weight of the evidence and that the trial court abused its discretion in refusing to vacate on the ground of unavoidable casualty or misfortune. The Court of Appeals realigned the parties and remanded the case for trial on the merits.

We Grant Certiorari to review two major issues: (1) The standing of an insurance company not a party to the suit below to petition to set aside a judgment; (2) Whether the trial court abused its discretion in overruling State Farm's petition because of the company's failure to prove that the action of its insured constituted an unavoidable casualty or misfortune under 12 O.S.1971, § 1031, subd. 7.[2]

### I.

Oklahoma's statutory provisions for vacation of judgments, 12 O.S.1971, § 1031, et seq., do not expressly comment on the standing of an insurance company to petition for the vacation of the default judgment of its insured nor does Oklahoma case law provide guidance on the specific question. *Fidelity Building and Loan Ass'n. v. Newell*, 176 Okl. 184, 55 P.2d 131 (1936) cited by appellee is not controlling. Though *Fidelity Bank* states that the Oklahoma statutes are not sufficiently broad to authorize one not a party to the action to maintain proceedings to vacate a judgment valid

---

**1.** The order reads in part: "It should be noted that this Court's ruling is not based on State Farm's lack of standing. Although the Oklahoma Supreme Court does not appear to have ruled directly on this subject, the better reasoned cases of other jurisdictions have held that where the stranger to the record is the liability insurer of the judgment debtor, such insurer has a right to seek relief by way of a petition to vacate a default judgment."

**2.** The issue of compliance with Rule 3.13 of the Rules of the Court of Appeals was much disputed in the briefs. Rule 3.13 states "A party who did not petition for rehearing in the Court of Appeals may not petition for certiorari." Appellee substantially complied with this rule, even though no formal brief was submitted (as called for in Rule 3.9). The striking of a petition for rehearing, however, does not preclude Supreme Court review.

on its face,[3] the actual holding of the case refines that general rule and holds that no third party *without an interest* can move to change a judgment.

The general rule that only parties to a judgment have standing to set it aside has long been recognized. 1 Freeman on Judgments, 5th ed. § 260; 49 C.J.S. Judgments, § 293 b. The law also recognizes exceptions to that rule:

> "The rule that none but parties to the judgment are permitted to interfere admits of exceptions, excluding from its operation persons not nominal parties to the action, but who are necessarily affected by the judgment, and who have equities entitled to be protected from its operation." 1 Freeman on Judgments, § 260.

> \* \* \* \* \* \*

> "One who is ultimately liable as indemnitor of the judgment debtor may seek relief." Id.

We find the line of cases allowing an insurance company to petition to set aside a default judgment against its insured to be well reasoned.[4]

The reasoning of *Kollmeyer v. Willis*, Mo. App., 408 S.W.2d 370 (1966) is especially applicable to the case at bar:

> "The general rule, upon which plaintiff relies, is that a stranger to the record has no right to move for a vacation of a judgment . . . But plaintiff overlooks the limitation that, in some instances, one not a party to the record, whose rights are injuriously affected by a judgment as the rights of an indemnitor may be, will be heard upon his motion to set aside a judgment." At 382.

Cases disallowing the vacation of a judgment on the insurer's petition frequently do so ostensibly on the insurer's lack of standing; however, the insurer's negligence in

defending the insured forms the basis of the opinions. In *Foos v. Tripet Construction Co.*,[5] for example, the court (considering the motion to have been made in the interest of the insurer) reversed an order granting the insured's motion to reopen a default judgment. The court said that the summons had come into the possession of the claims office manager who neglected to give it to an attorney. The court concluded that the insurer "by its gross negligence has forfeited its right to affirmative relief." In other words, the court held that one who is negligent will not be allowed relief from a default judgment, not that an indemnitor *per se* will not be allowed relief.

■ In ruling that a liability insurer not a party to the suit below, who is injuriously affected by the judgment, will be heard on his petition to set aside a judgment, we in no way change the aforementioned general rule that a stranger to the record has no right to move for vacation. To disturb the general rule would encourage litigation, allowing third persons to intervene and overturn adjudications to which the original parties made no objection and disrupting the presumption that every litigant understands his own interests. 1 Freeman on Judgments, § 258.

### II.

■ Granting, then, State Farm's standing, did the default result from an unavoidable casualty or misfortune as defined in 12 O.S.1971, § 1031, subd. 7, and did the trial court abuse its discretion in overruling State Farm's petition?

In *Independent Sch. Dist. No. 1, Etc. v. Jackson*, Okl., 608 P.2d 1153, we said:

> "The general rule is that a provision in an automobile liability policy requiring that the insured forward to the insurer every demand, notice, summons or other process

---

**3.** Any interested party may move to set aside a *void* judgment. *High v. Southwestern Insurance Co.*, Okl., 520 P.2d 662 (1974).

**4.** *Kollmeyer v. Willis*, Mo.App., 408 S.W.2d 370 (1966) and cases cited in 27 A.L.R.3d 332, Liability Insurer's Right to Open or Set Aside, or Contest Matters Relating to Merits of, Judg-

ment Against Insured, Entered in Action in which Insurer did not Appear or Defend.

**5.** 25 App.Div.2d 614, 267 N.Y.S.2d 644 (1966). *Foos* and other cases holding against the standing of an insurer in the instant fact situation are cited in 27 A.L.R.3d 332.

received by the insured is unambiguous, reasonable, valid, and a condition precedent to recovery on the policy. The purpose of this policy provision is to enable the insured to inform the insurer of the lawsuit so that it may investigate the accident, and prepare a timely defense for the insured."

In the instant case, defendant Gipson did not deliver the summons and petition to his insurance carrier until over six months after they were served on him, and that was approximately four months after he learned of the default judgment of which he told no one.[6]

In *Burroughs v. Bob Martin Corporation*, Okl., 536 P.2d 339, it was stated that: "[m]embers of this Court have on occasion been more impressed with the need to grant relief to a defaulting litigant than the lower court believed the party deserved. In the following cases we reversed the lower court's refusal to vacate default judgments: *Haskell v. Cutler*, 188 Okl. 239, 108 P.2d 146; *First Nat. Bank of Okmulgee v. Kerr*, 165 Okl. 16, 24 P.2d 985; *Shuler v. Viger*, 103 Okl. 129, 229 P. 280; *Hamburger v. Fry*, Okl., 338 P.2d 1088.

   *    *    *    *    *    *

"[d]efault judgments are never viewed with favor; litigated questions should be tried on their merits; it is the policy of the law to afford every party to an action a fair opportunity to present his side of a cause; an application to vacate a judgment, under 12 O.S.1971, § 1031, is addressed to the sound legal discretion of the trial court, and an order vacating said judgment will not be disturbed on appeal unless it clearly appears that the trial court has abused that discretion; such discretion should always be exercised so as to promote the ends of justice, and a much stronger showing of abuse of discretion must be made where a judgment has been set aside than where it has been refused."

We conclude that the trial court abused its discretion in refusing to vacate the default judgment on the ground of unavoidable casualty and misfortune. We vacate the default judgment and remand for trial on the merits.

IRWIN, C. J., BARNES, V. C. J., and HODGES and LAVENDER, JJ., and CORNISH, Sp. J., and BRETT, Sp. J., concur.

SIMMS, DOOLIN and OPALA, JJ., concur in part, dissent in part.

DOOLIN, Justice, concurring in part, dissenting in part:

I find no fault with the majority opinion which affords standing to State Farm in seeking vacation of the default judgment. I concur in Part I.

I dissent to Part II of the majority opinion, when it holds the trial court abused its discretion in refusing to vacate the default judgment.

In affirming the decision of the trial court, we follow the general rule that where it is contended that the trial court abused its discretion in refusing to vacate a default judgment, and the question of such abuse depends on a disputed question of fact pertaining to the ground relied on for vacating the judgment, the presumption is that the finding of fact was consistent with the order denying the motion to vacate and, therefore, there was no abuse of discretion. *Woodruff v. Moore*, 182 Okl. 120, 77 P.2d 62 (1938.)

I am authorized to state that SIMMS and OPALA, JJ., support the views expressed in this opinion.

OPALA, Justice, concurring in part and dissenting in part:

The insurer—who was a stranger to the injured person's [plaintiff] tort action against the insured [defendant]—met with an adverse district court disposition of its

---

6. *Leslie v. Spencer*, 170 Okl. 642, 42 P.2d 119, relied on by plaintiff's, presented a situation where defendant's notified the insurer that suit had been filed, sent copy of the summons and plaintiff's petition to the insurer, and relied on insurer to make defense against the action.

§ 1031 [1] petition for vacation of the default judgment against the insured. The Court of Appeals, Div. 1, reversed. Our decision on certiorari reaches the same result as that of the Court of Appeals. For the reasons to be outlined, I *recede* from the court's pronouncement. *I would affirm the trial judge's refusal to vacate the plaintiff's judgment.*

## I

### ISSUES ON CERTIORARI

The case presents two first-impression questions:

(1) Does a judgment-debtor's public liability indemnitor (insurer) have standing—independent of the insured—to prosecute a § 1031 proceeding? and

(2) Assuming the insurer has such standing, does its alleged failure to receive from the insured a timely notice of the plaintiff's suit constitute "unavoidable casualty or misfortune, preventing . . . [one] from prosecuting or defending" within the meaning of Subdiv. 7 of § 1031?

To the first question posed I would give an affirmative answer and to the second a negative one.

## II

### INSURER'S STANDING TO INVOKE THE § 1031 REMEDY IS INDEPENDENT OF THE INSURED

In every action arising from negligent use of the insured vehicle, a judgment against the insured subjects the insurer—*qua* contractual indemnitor under public liability coverage of an automobile policy—to at least potential exposure. On any such suit's termination adverse to the insured, the insurer has a legally recognized interest

of its own to protect and is deemed "injuriously" or "prejudicially" affected. Even though the insurer be a stranger to the judgment roll, emerging case law confers on him standing independent of the insured to invoke available post-judgment vacation remedies.[2] I accede to this doctrine and join the court in its adoption.

## III

### ALTHOUGH INSURER'S STANDING TO PROSECUTE A § 1031 PROCEEDING IS DOUBTLESS INDEPENDENT OF THE INSURED, ITS CLAIM FOR RELIEF IS VICARIOUS AND HENCE NOT BROADER THAN THAT OF THE INSURED

The framework of remedies created by § 1031 et seq. provides the *unsuccessful litigant* with opportunity for relief from that class of judgments which is statutorily defined as vulnerable to vacation. Privies and other strangers to the record, though they may have standing to prosecute a § 1031 proceeding, are merely incidental beneficiaries of the legislative largesse. Intended as the primary beneficiary of a § 1031 process was neither privy nor stranger but rather the *party*. The cluster of interrelated statutes that follow § 1031 is replete with references to the *party's* claim for redress. Not a single mention of either privy or stranger is to be found in any of the pertinent sections. The language used throughout the enactments that deal with vacation remedies leaves absolutely *no* doubt as to the primary object of the legislator's concern. We recognized this basic principle long ago. A non-party accorded standing in a § 1031 proceeding has " . . . *the same right* to move for its [the judgment's] vacation *as a party . . . might have,* but . . . certainly . . . *no greater right."* [emphasis supplied].[3] In short, although a

---

1. 12 O.S.1971 § 1031. The insurer rested its petition to vacate on Subdiv. 7 of § 1031 whose terms authorize relief "[f]or unavoidable casualty or misfortune, preventing the party from prosecuting or defending."

2. *Kollmeyer v. Willis,* 408 S.W.2d 370 [Mo.App. 1966]; see cases collected in the annotation beginning at 27 A.L.R.3d 350.

3. *Simmons v. Howard,* 136 Okl. 118, 276 P. 718, 719 [1929]; the same principle was followed in *Frost v. Blockwood,* Okl., 408 P.2d 300, 304 [1965] where we held that a transferee of a

non-party's *standing* may be *"independent"*, its *claim* is nonetheless *vicarious* and merely co-extensive with one of the party in whose shoes the stranger to the record must stand.

The very ground invoked for vacation in this case—Subdiv. 7 of § 1031—illustrates most clearly the vicarious nature of the insurer's claim for the relief sought. The subdivision plainly *requires* that relief judicially afforded under its terms be circumscribed to instances of "unavoidable casualty or misfortune, preventing *the party* from prosecuting or defending." [emphasis added]. The statute's focus is on the *party's* "casualty or misfortune". It is hence not to be doubted that a non-party with standing to press for Subdiv. 7 relief has but a vicarious claim which is circumscribed by the right of another—that of the party in whose shoes the stranger must stand.

The insurer's claim to § 1031 relief is therefore measured by, and merely co-extensive with, that of the insured. As a non-party to the judgment record the insurer stands here in the shoes of the insured. Only if the latter could himself have maintained a Subdiv. 7 claim for vacation, would the insurer be entitled to the relief which was denied him in the district court. In short, the legal efficacy of the insurer's plea and evidence must be tested by its sufficiency to support a claim by the insured. Neither the petition nor the facts adduced below, if pressed by the insured, would have been sufficient to secure a vacation order on the basis of Subdiv. 7, § 1031.

## IV

## THE INSURER'S VICARIOUS CLAIM TO SUBDIV. 7 RELIEF WAS CORRECTLY DENIED

(a)

The record on appeal discloses two § 1031 petitions to vacate. The first of these, dated November 29, 1977, was filed by the insurer in its own name; the second one, dated February 9, 1978, was in the name of the insured who later refused to join in it and disclaimed any interest in its prosecution. Neither petition contained more than a purely conclusory allegation of "unavoidable casualty". The petitions were hence insufficient in law and the trial judge correctly sustained the plaintiff's demurrer to the defective pleadings.[4]

(b)

The proof adduced in support of the insurer's Subdiv. 7 plea came in two contradictory versions. While the insurer's agent who had dealt with the insured testified that the company had received no notice of the plaintiff's suit, the insured insisted he had personally conveyed to the agent actual knowledge of the suit's commencement and had provided him with the suit's case number in ample time for the company to undertake his defense.

It matters not which of these versions be true. If we assume the insured told the truth, the insurer is not entitled to Subdiv. 7 relief because once given notice the insurer had the duty to defend. Its negligence is imputable to the insured.[5] Were we, on the other hand, to accept the insurer's version, it follows that the insured was himself neg-

party's interest "has the same right to challenge the validity of the judgment" that the original party had.

A different statutory rule applies when the judgment sought to be vacated is alleged to be *void*. Under the provisions of 12 O.S.1971 § 1038 *any party affected* by a void judgment has an *independent* claim for vacation. It may seek vacation *at any time. Jent v. Brown*, Okl., 280 P.2d 1005, 1008 [1955].

4. In syllabus 3 of *Lindsey v. Goodman*, 57 Okl. 408, 157 P. 344 [1916] it was held: "When

'unavoidable casualty or misfortune' is alleged, the facts must be so stated as to make it appear that no reasonable or proper diligence or care could have prevented the trial or judgment; that is, that the party complaining is not himself guilty of any laches."

This statement of the law was reaffirmed by this court in *Davidson v. Pickens*, Okl., 261 P.2d 872, 874 [1953].

5. *Leslie v. Spencer*, 170 Okl. 642, 42 P.2d 119, 121–122 [1935].

ligent in failing to do everything that was necessary to secure the insurer's defense.

Negligence of an insured defendant, or of insurer as his legally recognized agent, in failing to prevent the entry of a default judgment is not unavoidable casualty.[6] The Subdiv. 7 claim before us is vicarious. The insurer cannot prevail under either version of the testimony proffered. It simply failed to show facts consistent with the exercise of proper diligence or care on the part of the insured—the person in whose shoes it must stand here.

"Unavoidable casualty or misfortune" refers to events which human prudence or foresight cannot prevent. Negligence by the defendant or his agent is the very antithesis of an event or happening against which Subdiv. 7 was intended to guard.[7] In the final analysis, the plaintiff should not suffer the loss of her default judgment because the insured defendant failed in his efforts to procure effective legal defense services from his insurer.

It is immaterial how this failure came about. The insured defendant's non-performance of his contractual obligation to the insured or vice versa, whether defensible or not, is not ground for vacation under Subdiv. 7, although a breach by the insured in not delivering a summons may afford the insurer a shield from liability in a garnishment or in a declaratory judgment proceeding.

This case is distinguishable from *Burroughs v. Bob Martin Corporation*[8] and *Latson v. Eaton*.[9] There is no proof here that some untoward event—occurring after the service of summons—prevented *the defendant* from launching his defense. Because this is a *vicarious* Subdiv. 7 claim, the cited cases are clearly inappropriate.

The insured defendant's *legal duty* to defend or suffer default is—from the plaintiff's point of view—indivisible and cannot

be shared with the insurer. The breach of this *legal duty* cannot be exonerated, in a Subdiv. 7 claim, by the insurer's failure to do its *contractual duty* to defend. Nor can the insured defendant's neglect of *contract duty* timely to deliver notice of the suit to the insurer exonerate the insured of his *legal duty* to defend.

Since it is clear that the insured could not claim Subdiv. 7 relief either on the basis of his own breach of contract duty to the insurer or on the insurer's breach of contract duty to him, neither can the insurer prevail on these grounds in its *vicarious* § 1031 claim.

V

SUMMARY

The plaintiff should not have to lose her judgment because either the insurer failed to defend or the insured failed to give the insurer timely notice of the suit. In this vicarious vacation claim there is simply no proof of casualty or misfortune that prevented the *defendant* himself from defending. The bottom line is this: *since the defendant himself could not have prevailed by shifting the blame for the default to the insurer, neither can the insurer extinguish the plaintiff's judgment by attributing the legal fiasco to the insured defendant's fault.* Fault allocation between the insured and his insurer *inter se* cannot be the gravamen of a Subdiv. 7 proceeding. It is an issue to be litigated in a garnishment proceeding or in a declaratory judgment suit.

The trial judge correctly refused to grant Subdiv. 7 relief.

---

6.   *Leslie v. Spencer*, supra note 5 at 119, 42 P.2d 119.

7.   *Wagner v. Lucas*, 79 Okl. 231, 193 P. 421, 423 [1920]; *Cunningham v. Cunningham*, Okl., 571 P.2d 839, 842 [1977].

8.   Okl., 536 P.2d 339, 341 [1975].

9.   Okl., 311 P.2d 231 [1957].