2011 OK CIV APP 106

**Mike ANDERSON, Plaintiff/Appellant,**

v.

**ACCESS MEDICAL CENTERS; Derrick Freeman, D.O.; Lenard "Lenny" Phillips, D.O.; and Bruce Cornett, D.O., Defendants/Appellees.**

**No. 108,314.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 28, 2011.

Michael L. Bardrick, and Thomas J. Steece, Oklahoma Legal Services, P.L.L.C., Oklahoma City, OK, for Appellant.

John Wiggins, Erin A. Renegar, Wiggins Sewell & Ogletree, Oklahoma City, OK, for Defendants/Appellees.

JANE P. WISEMAN, Judge.

¶ 1 Plaintiff Michael Anderson's former attorneys, Michael L. Bardrick and Thomas J. Steece (Attorneys)[1], appeal the trial court's denial of a motion to vacate. The issues raised in this appeal include whether Attorneys have standing to appeal independent of Plaintiff, whether they had standing to file a motion to vacate without Plaintiff's consent, and whether grounds exist pursuant to 12 O.S.2001 §§ 1031 and 1038 to vacate the trial court's order dismissing the lawsuit without prejudice. Having reviewed the record and pertinent law, we dismiss this appeal for lack of standing.

**FACTS AND PROCEDURAL BACKGROUND**

¶ 2 On February 28, 2007, Plaintiff filed a medical malpractice case against Access Medical Centers, Derrick Freeman, D.O., Lenard Phillips, D.O., and Bruce Cornett, D.O. (Defendants).

¶ 3 On September 17, 2007, Defendants issued discovery requests to Plaintiff. Plaintiff did not respond. After making several attempts to contact Plaintiff's counsel by letter and telephone regarding the overdue responses, Defendants filed a motion to compel on January 14, 2008. Plaintiff's counsel neither responded to the motion nor appeared for the hearing on the motion. The trial court granted Defendants' motion and ordered Plaintiff to respond to discovery. The trial court further stated in its order that if Plaintiff continued to resist discovery, "this case may be dismissed without prejudice upon application." When Plaintiff still failed to respond to discovery, Defendants filed a motion to dismiss on March 25, 2008. Plaintiff's counsel again failed to respond to the motion or appear for the hearing. At the May 15, 2008, hearing on the motion, the trial court granted Defendants' motion to dismiss and dismissed the case without prejudice for failure to co-operate in discovery.

¶ 4 Almost a year and a half later, on October 6, 2009, Attorneys sent Plaintiff a letter informing him they had reviewed his current medical records which they represented as showing "a marked improvement in [his] cardiac function" and "[his] apparent return to better health." Registering concern about the effect of this news on Plaintiff's damages in his malpractice case, Attorneys told Plaintiff that if the medical records from Plaintiff's most recent visit to the cardiologist confirmed his return to normal cardiac function, Attorneys "will need to discuss winding up this litigation and closing [Plaintiff's] file."

¶ 5 On October 22, 2009, Attorneys sent Plaintiff a second letter stating that with the

1. It should be noted at the outset that Attorneys have designated Plaintiff as the appellant without Plaintiff's permission or participation as discussed more fully in this Opinion. Attorneys have not sought status as intervenors to press their claim for relief, nor have they designated themselves as appellants in the case caption, the petition in error, or any filing in this appeal. *See* footnote 2, *infra.*

improvement in Plaintiff's condition, Attorneys did not feel it was in Plaintiff's best interest to continue the litigation. According to Attorneys' statement in the letter, Plaintiff had agreed with Attorneys and authorized Attorneys to file a dismissal without prejudice as to all Defendants. Attorneys further stated, "I have caused a dismissal without prejudice to be filed in your case" and told Plaintiff that they were closing his file and advising him to pick up his medical records from their office.

¶ 6 In December 2009, Plaintiff retained new counsel to pursue a possible legal negligence claim against Attorneys arising from their handling of Plaintiff's medical malpractice case. On December 28, 2009, Plaintiff's counsel sent Attorneys a letter to that effect asking Attorneys to forward the letter to their liability carrier. On January 12, 2010, Plaintiff's counsel sent a letter to Oklahoma Attorneys Mutual Insurance Company reciting the history of Attorneys' representation of Plaintiff and making a claim for Attorneys' legal negligence.

¶ 7 On March 11, 2010, Attorneys filed a motion to vacate the May 15, 2008, dismissal arguing that pursuant to 12 O.S.2001 § 1031(3), an irregularity in obtaining the order authorized its vacation. Attorneys argued Defendants' lack of compliance with the "Seventh Judicial District Rules and the Oklahoma Supreme Court pronouncements requiring notice and participation of all counsel in the memorialization process" of the May 15, 2008, dismissal amounted to an irregularity and the dismissal should be vacated.

¶ 8 In their response, Defendants contended Plaintiff failed to demonstrate any irregularity in the order in light of Attorneys' knowledge of Defendants' discovery motions, including their motion to dismiss, and the hearings on those motions, and Attorneys' failure to respond either in writing or by appearance at the hearings.

¶ 9 Defendants shortly thereafter filed a supplemental response, arguing the motion to vacate should be denied because Attorneys had no standing to seek vacation of the dismissal because they no longer represented Plaintiff and had no authorization to file a motion to vacate in Plaintiff's name. Attached to the supplemental response was Plaintiff's affidavit in which he testified (1) that he retained new legal counsel to pursue a possible legal malpractice claim against Attorneys, (2) that he had not authorized Attorneys to file a motion to vacate on his behalf, and (3) that Attorneys did not currently represent him. Defendants argued that because Attorneys had no standing, "an unauthorized motion requesting relief is improper and substantially prejudices the rights of [D]efendants."

¶ 10 On April 14, 2010, after a hearing, the trial court overruled Attorneys' motion to vacate.

¶ 11 Attorneys appeal.

## STANDARD OF REVIEW

¶ 12 "The burden is on the party invoking a court's jurisdiction to establish its standing to seek relief in the court." *Oklahoma Educ. Ass'n v. State ex rel. Oklahoma Legislature*, 2007 OK 30, ¶ 7, 158 P.3d 1058, 1062. "Only if standing exists must the case proceed to the merits." *Toxic Waste Impact Grp., Inc. v. Leavitt*, 1994 OK 148, ¶ 9, 890 P.2d 906, 911. "Whether a party lacks standing to appeal is a question of law, which this Court reviews de novo...." *In re Baby W.*, 2009 OK CIV APP 21, ¶ 7, 220 P.3d 32, 34.

## ANALYSIS

¶ 13 Before reaching the merits of the appeal, we must first address Defendants' argument that Attorneys lack standing to appeal and that the appeal should be dismissed. Standing is the determination of whether the appellant is "the proper party to seek adjudication of the asserted issue." *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 16, ¶ 5, 976 P.2d 545, 547. Three elements must be met to establish standing:

(1) a legally protected interest which must have been injured in fact—*i.e.*, an injury which is actual, concrete and not conjectural in nature,

(2) a causal nexus between the injury and the complained of conduct, and

(3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.

*Id.* at ¶ 3, 976 P.2d at 547 (emphasis omitted); *see also Toxic Waste Impact Grp.*, 1994 OK 148, ¶ 8, 890 P.2d at 910–11. The question to be decided is whether Attorneys have established the necessary elements of standing to permit them to challenge the trial court's order denying the motion to vacate.

■■■ ¶ 14 The general rule is "that only parties to a judgment have standing to set it aside." *Crawford v. Gipson*, 1982 OK 31, ¶ 7, 642 P.2d 248, 250. An appellant must show a legally protectable interest has been injured in fact in order to have standing to appeal. The injury in fact must be "direct, substantial and immediate, rather than contingent on some possible remote consequence or possibility of some unknown future eventuality." *Toxic Waste Impact Grp.*, 1994 OK 148 at ¶ 9, 890 P.2d at 911.

¶ 15 To support their claim of a legally protected interest that has been injured, Attorneys cite *Crawford*, 1982 OK 31, 642 P.2d 248. In *Crawford*, the plaintiff filed an action against the defendant, Gipson, for personal injuries arising from an automobile accident. *Id.* at ¶ 1, 642 P.2d at 249. The defendant was personally served with summons, and when he failed to plead or answer, a default judgment was taken against the defendant. *Id.* Five months later, the defendant's insurer, State Farm Insurance Company, without defendant's consent, filed a petition to vacate. *Id.* at ¶ 2, 642 P.2d at 249.

¶ 16 The question on appeal was whether State Farm, who was not a party to the suit below, had standing to pursue vacation of the judgment. *Id.* at ¶ 5, 642 P.2d at 249. The Supreme Court noted there are exceptions to the general rule that only parties have standing to set aside judgments. *Id.* at ¶ 7, 642 P.2d at 250. Attorneys in the present case relied on an exception delineated in *Crawford* which applies to those who are " 'necessarily affected by the judgment, and who have equities entitled to be protected from its operation.' " *Id.* (quoted citation omitted). The Court noted that " '[o]ne who is ultimately liable as indemnitor of the judgment debtor may seek relief.' " *Id.* The Court quoted the

reasoning from *Kollmeyer v. Willis*, 408 S.W.2d 370 (Mo.Ct.App.1966), in which the Missouri Court stated " 'one not a party to the record, whose rights are injuriously affected by a judgment as the rights of an indemnitor may be, will be heard upon his motion to set aside a judgment.' " *Crawford*, 1982 OK 31 at ¶ 9, 642 P.2d at 250 (quoting *Kollmeyer*, 408 S.W.2d at 378).

¶ 17 In *Crawford*, a default judgment for $25,000 had been entered against the defendant for all or some of which State Farm was ultimately liable as the defendant's indemnitor. *Id.* at ¶¶ 1–2, 642 P.2d at 249. State Farm's liability was concrete and particularized, was actual and imminent, and was not conjectural or hypothetical.

¶ 18 The Court in *Crawford* clearly applied the exception to indemnitors having concrete and actual or imminent injuries. *Id.* at ¶¶ 7–11, 642 P.2d at 250. The Court explicitly narrowed the exception's applicability when it ruled that an "insurer not a party to the suit below, who is injuriously affected by the judgment, will be heard on his petition to set aside a judgment." *Id.* at ¶ 11, 642 P.2d at 250. The Court emphasized that it was in no way changing the "general rule that a stranger to the record has no right to move for vacation." *Id.* The Court reasoned that changing the general rule would "encourage litigation, allowing third persons to intervene and overturn adjudications to which the original parties made no objection." *Id.*

¶ 19 *Crawford* is factually distinguishable from the instant case because Attorneys are not indemnitors or insurers of Plaintiff's case who have sustained direct injury as a result of a court adjudication through casualty or misfortune not of their making. Attorneys' alleged "stake" in the outcome of the previous litigation is speculative and based only on "some possible remote consequence." It is not concrete, actual, or imminent.

■■■ ¶ 20 We find additional support for distinguishing the facts in *Crawford* from those in the instant case in the Supreme Court's discourse in *Crawford* that an insurer who suffers a loss (from a default judgment) caused by its own negligence in defending its insured will not be granted relief from that loss. "[O]ne who is negligent will not be

allowed relief from a default judgment...." *Id.* at ¶ 10, 642 P.2d at 250. The insurer in *Crawford* was found to have standing to seek relief from a default judgment because it was directly affected by the judgment and had " 'equities entitled to be protected from [the judgment's] operation' " and because the judgment as to the insurer's interests resulted from an "unavoidable casualty or misfortune, preventing [one] from prosecuting or defending" as provided in 12 O.S. § 1031(7). *Id.* at ¶¶ 7, 16, 642 P.2d at 250–51 (quoted citation omitted). Neither is the case here. We conclude *Crawford* does not support Attorneys' argument that they have standing.

¶ 21 Although Attorneys cite several cases in their reply brief for the proposition that their attorney lien in Plaintiff's case gave them an interest sufficient to establish standing, none of the cited Oklahoma cases involves an issue of standing. We agree with Defendants' position that allowing standing to be established on the basis of an attorney's contingent fee agreement or lien alone would allow any attorney with such a fee arrangement to appeal adverse rulings without the client's participation or consent, and perhaps even after the client's termination of the attorney's representation. We decline to do so.

¶ 22 We also note that in general, "an order removing a party's counsel (upon disqualification or for other reasons) may be viewed on appeal [when] brought *by the client.*" *Towne v. Hubbard,* 1999 OK 10, ¶ 2, 977 P.2d 1084, 1085 (emphasis added). It is recognized that "a party's legal counsel has standing, separate from his client, to appeal an order which imposes a *monetary* sanction against him/her personally." *Cities Serv.,* 1999 OK 16 at ¶ 6, 976 P.2d at 547–48. There are also instances when appellate standing has been extended to an attorney when challenging court-imposed monetary sanctions against the attorney, and when challenging a trial court's decision on the amount of attorney fees allowed. *See Vickers v. Boyd,* 1992 OK 42, 836 P.2d 1269 (the

attorney was determined to have standing after $4,000 in attorney fees were imposed upon him as sanctions); [2] *Tisdale v. Wheeler Bros. Grain Co., Inc.,* 1979 OK 94, 599 P.2d 1104 (attorney had standing to appeal trial court's order reducing the amount of attorney fees agreed to by the parties). In both instances, unlike the Attorneys' claimed interest in the instant case, the injury was concrete, particularized, actual and imminent.

## CONCLUSION

¶ 23 Attorneys fail to meet the first requirement of standing, that of a legally protected interest, and therefore lack standing to bring this appeal. Because Attorneys lack standing, this Court has no jurisdiction to consider the merits of this appeal. Based on the foregoing, we will not address whether Attorneys had standing in the trial court to file a motion to vacate without Plaintiff's consent, nor will we consider whether grounds exist to vacate the trial court's order dismissing the case without prejudice.

¶ 24 **DISMISSED.**

FISCHER, V.C.J., and BARNES, P.J., concur.

---

**2.** We would note Justice Opala's dissent in this case in which he states: "I would dismiss the petition in error as utterly inefficacious *for the commencement of [attorney's] appeal. Neither the caption nor the body of the petition designates this lawyer as a party appellant herein.* The omission constitutes a fatal jurisdictional defect. No less authority than our nation's highest tribunal is unequivocally committed to this mechanical norm of adjective law." *Vickers v. Boyd,* 1992 OK 42, 836 P.2d 1269 (Opala, J., dissenting).